IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DOUGLAS A. ABELOE,<br><br>   Plaintiff,<br><br>vs.<br><br>E. ROBBY RUSSO, MARK ASKERLUND, DAN BARTLETT, and RANDY MAUER,<br><br>   Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 2:12CV839DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants E. Robby Russo, Mark Askerlund, Dan Bartlett, and Randy Mauer's Motion for Judgment on the Pleadings pursuant to Rule 12© of the Federal Rules of Civil Procedure. The court held a hearing on the motion on April 10, 2013. At the hearing, Plaintiff was represented by David W. Brown, and Defendants were represented by Bret W. Rawson. The court took the matter under advisement. The court has considered carefully the memoranda submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court renders the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff's Complaint seeks relief for alleged violations of 42 U.S.C. § 1983 and the Fourth Amendment against several Cottonwood Heights police officers arising out of Plaintiff's

arrest on charges of Felony Child Abuse and Custodial Interference.

Plaintiff Douglas Abeloe and his ex-wife Kelli Mease were divorced in June 2009 and had a prolonged custody dispute regarding their two minor children.  The Cottonwood Heights Police Department was well aware of Abeloe and Mease because of their numerous contacts with its office.  Based on an incident on February 19, 2009, Abeloe was charged with two counts of sexual battery against Mease.  He pled guilty to both counts and was sentenced to probation on January 25, 2010.

The criminal docket reflects that the judge presiding over Abeloe's criminal case made various rulings throughout the pendency of the criminal action with respect to Abeloe's visitation with his children.  For example, the docket shows orders stating that Abeloe was not allowed visitation with his children and other orders state that he was allowed only supervised visitation.  As part of his sentencing on January 25, 2010, the court terminated all previous orders regarding visitation.  Also as part of his sentence, the court required Abeloe to complete a domestic violence evaluation and boundaries counseling.

On January 28, 2010, three days after Abeloe's sentencing, Abeloe and Mease met with Dr. David Dodgion, Ph.D, a licensed psychologist.  At that meeting with Dr. Dodgion, Abeloe and Mease discussed a parent time schedule and visitation schedule.  After the meeting, all the parties appear to have exchanged clarifying communications about the agreement.  Dr. Dodgion then memorialized the agreement in a document entitled "Parent Time Agreement," which was finalized sometime in February 2010.

The Parent Time Agreement states that "every other week Mr. Abeloe will have Sydney and Erik for an extended weekend with Thursday overnights on alternate weeks."  The agreement

then contains sections explaining the schedules for "Extended weekend visitation," "Standard weekend visitation," and "Thursday midweek overnight." The agreement then lists specific dates for extended weekend and standard weekend visitations for the next six months. The last visitation provided for in the agreement was an "extended weekend visit" for July 28 to August 1, 2010.

On June 14, 2010, the court in Abeloe and Mease's divorce case issued an Order Modifying Decree of Divorce and Enforcing Settlement Agreement. This June 2010 court order states that the custody provisions of the original decree remained in effect, with specified exceptions for Abeloe's parent time. The order then provides a section for "parent time before the start of therapy with Dr. Dodgen [sic]" and "parent time after the start of therapy with Dr. Dodgen [sic]." Prior to therapy with Dr. Dodgion, Abeloe is allowed only "line of sight" supervised visitation. After the start of therapy with Dr. Dodgion, the order provides: "The parties agree that they shall each follow the recommendation of Dr. Dodgen [sic] as to: (a) the need for therapy by each of the parties to this Settlement Agreement . . . (b) on-going parent-time by Doug Abeloe and whether that parent-time should continue to be supervised by his parents; © make-up parent-time to be exercised by Doug Abeloe; and (d) when Doug Abeloe should be permitted to exercise his first right of refusal to provide child care for the two above-named minor children."

There is no indication as to whether Abeloe engaged in therapy with Dr. Dodgion. The only evidence before the court is that Abeloe and Mease met with Dr. Dodgion in January 2010 to agree on a visitation schedule, which was memorialized in the February 2010 Parent Time Agreement.

The specified six-month visitations in the Parent Time Agreement with Dr. Dodgion ended on August 1, 2010.  On August 3, 2010, Mease emailed Dr. Dodgion, stating: "I realize that we are not under contract with you, but I would appreciate your help in clarifying where we stand regarding our arrangement."  She then provided Dr. Dodgion with the language from the June 2010 Court Order regarding parent-time after the start of therapy with Dr. Dodgion and stated: "It is my understanding that you are not responsible for determining our custody agreement.  You did coordinate the makeup parent time and schedule for the first 6 months (thank you for doing that with us) but that agreement ended the end of July.  I believe, at this point, we are to go back to our original custody agreement in the divorce.  Am I correct in believing that?  Please let me know!"

The next day, on August 4, 2010, Dr. Dodgion responded by sending an email to both Abeloe and Mease.  The email states: "Although it is not my role to determine custody, the settlement agreement specified that I am to determine on-going parent time by Doug.  When we worked out the parent time agreement, I intended that the standard visitation schedule established in that agreement was to be ongoing.  The reason that the agreement only covered a 6 month period was because Doug had additional make-up time that was to be completed during that period.  This changed the standard schedule and was complicated, hence the need for the specificity of the agreement.  After that 6 months, parent time was to return to the standard schedule as identified in the parent time agreement, not minimum standard."

On August 5, 2010, Abeloe responded to Dr. Dodgion's email by stating that after the six-month period of visitation, the Parent Time Agreement would revert to the extended visitation schedule instead of the standard visitation based on the first sentence of the Agreement.

The Agreement states: "Every other week Mr. Abeloe will have Sydney and Erik for an extended weekend with Thursday overnights on alternate weeks." Abeloe provided further explanation for what he believed to be the on-going parent time agreement and asked Dr. Dodgion if that was a correct interpretation.

On August 5, 2010, at 10:26 a.m., Dr. Dodgion responded that his use of the phrase "standard visitation schedule" referred to the "extended weekend visitation schedule which is Doug's standard visitation." In essence, Dr. Dodgion's response agreed with Abeloe's interpretation of the Agreement.

Approximately an hour and a half later, at 11:54 a.m., Abeloe emailed Chief Russo of the Cottonwood Heights Police. Abeloe asked Chief Russo to read, and have his other officers read, the June 14, 2010 Court Order. He stated that the order "makes clear what the terms of the custody agreement is. The document supercedes the original divorce decree as it is the most recent order. Regardless of any perceived disagreements from Kelli Mease, the language of the modified court order is clear and binding. There are no provisions or language in the current agreement for Kelli to change the parent time schedule set forth by Dr. Dodgion, PHD." After stating that he will request a case number for each violation of the Parent Time Agreement by Mease, he states "What I am asking for is this......1. Please review the most recent court order dated 06-14-2010. See attached. 2. Please review the Parent Time Agreement set forth by Dr. Dodgion dated 02-10-10. See attached. 3. Briefly discuss this with the officers and Sargent's [sic] so that we all have the same understanding of the provisions regarding visitation in the most recent court order and parent time agreement." Finally, he stated that he would be happy to meet with Chief Russo or anyone he chose or have his attorney contact him.

Despite the emails that had been going back and forth between Abeloe, Mease, and Dodgion regarding the ongoing nature and effect of the Parent Time Agreement, Abeloe did not attach any of those emails.

Later that evening, on August 5, 2010, Cottonwood Heights police officers arrested Abeloe on charges of Felony Child Abuse and Custodial Interference.  The police report for the arrest states that Abeloe had come to the police department at least four times between August 2 and August 5, 2010, asking questions about his visitation rights and the enforcement of them.  The report states that Abeloe would ask several "what if" questions to ascertain what the officers would do if he did not bring the children back at the end of a scheduled visitation and that he demanded that the officers arrest Mease if she did not adhere to the visitation agreement.

The report further states that on August 3, 2010, the officer preparing the report, Officer Askerlund, explained to Abeloe that he felt Abeloe's actions were intended to get back at his wife for a rape charge she had filed the previous year.  Officer Askerlund indicated that at no time in any of his conversations with Abeloe did he appear to be concerned for the welfare of his children.  Accordingly, Officer Askerlund stated that he informed Abeloe that he needed to quit using his children in a "tug of war" battle with his ex-wife and the welfare of the children needed to come first.  The officer stated that he had seen at least two instances in which the hostilities between Abeloe and Mease had visibly upset their children.  Furthermore, the officer stated that his impression of Abeloe's visits with the police officers that week appeared to be a "I dare you to try and arrest me" type of challenge.

Abeloe's Complaint and the police report both indicate that Abeloe received his children on the morning of August 5, 2010.  However, the parties disagree as to whether he was to return

the children to Mease that evening or keep the children for a long weekend visitation. Abeloe's Complaint alleges that, despite the specific dates listed for his extended weekends on the Parent Time Agreement, he did not have the children the prior weekend and was entitled to have an extended weekend visitation with them from August 5-9, 2010. Officer Askerlund's report states that Mease contacted the police department on August 5, 2010, stating that Abeloe had emailed her, stating that he intended to keep the kids until Monday because he was shorted some visitation earlier in the year. In speaking with the officer, Mease stated that Abeloe was to return the children to her later that evening and she feared for the mental well being of her children.

Officer Askerlund's report states that based on Mease's call and his own interactions with Abeloe during the week and on previous occasions when police had been involved, he also became concerned for the well being of the children. He discussed the case with a sergeant, who called an attorney at the Salt Lake County Attorney's office.

The attorney told the officers that the mental and physical well being of the children were the officers' first priority. She suggested that the officers contact Abeloe and ascertain why he refused to return the children. She advised the officers that he was committing custodial interference and contributing to the mental detriment of the children by refusing to abide by the court ordered visitation.

When officers went to Abeloe's residence, the officer's report states that they questioned Abeloe about continuing to subject the children to this ongoing dispute and refusing to return the children according to the order. The report states that Abeloe's response was that his attorney advised him to and that the children were his and he had parental rights. Officer Askerlund claims that he explained that Abeloe's behavior was harmful to the children and that he and

Mease were using the children and the police department as pawns in the divorce.

Abeloe's Complaint, however, alleges that the police report is falsified and that he explained to the officers that the pertinent custodial orders and agreements allowed him to have the children for an extended weekend between August 5-9, 2010. Abeloe alleges that although he gave the officers all of the relevant information, they ignored it. Abeloe further alleges that Officer Askerlund stated: "We do not care about your court order or your parent time agreement. We are here to put an end to this, and this is how we are going to do it."

The officer states that based on his belief that Abeloe did not have the best interest of the children and their mental well being as his first priority, he made the decision to place Abeloe under arrest for custodial interference and child abuse. The report then states that Utah Code Annotated section 76-5-109(1) (G) refers to actions that place a child in jeopardy or harm by exposing them to continued mental duress and emotional harm. The officer stated that he believes that Abeloe was impairing his children's ability to function by constantly exposing them to a negative police presence, their parents arguments, and in the parents' inability to act with civility when child exchanges take place.

The report then states that Abeloe was charged under Utah Code Annotated Section 76-5-303 for refusing to return the child at the appointed time. The report states that Abeloe, by his own admission, said he intended to hold the children until Monday, which the officer stated that he believed to be three days past his court ordered visitation terms. Abeloe had told the officer that he planned to do this to make up for past visitation shortages.

The report further states that Officer Askerlund does not believe the children witnessed the arrest because they were in the house. The report states that Abeloe had been interacting with

the officers outside the home and did not tell the officers that the children were inside the home until officers asked about their location. Abeloe, however, alleges that the children witnessed his arrest and the incident caused them emotional despair and fear.

The police report for Abeloe's arrest then contains a supplemental narrative added on Monday, August 9, 2010, by Chief Robby Russo. The supplemental information states that Abeloe's attorney, Mark Moffat, sent Chief Russo a letter on August 9, 2010, providing the emails with Dr. Dodgion and Mease leading up to August 5, 2010, and proposing a resolution to the case. Based on Chief Russo's reading of the emails, he stated that he understood that Abeloe believed that the Parent Time Agreement had been extended by Dr. Dodgion. Chief Russo notes in the report that he found it curious that he spoke to Dr. Dodgion prior to the arrest and Dr. Dodgion did not mention that the Parent Time Agreement was extended. Chief Russo also expressed frustration at the convoluted agreements in the case and the fact that emails, that were not provided to the officers, were being used to determine custody instead of court orders. Chief Russo stated that he was "at a loss to understand why neither party presented the emails until three days after the confrontation."

Nonetheless, the report states that Chief Russo had productive conversations with Moffat, the county attorney previously consulted, and Mease's attorney, Randall Skeen. He stated all parties agreed that the visitation needed to be cleaned up and a third-party exchange service involved. He stated that the attorneys would work to resolve the matter in a way that will better serve the emotional needs of the children and that the criminal charges would be screened to ensure and protect the interests of the children.

Abeloe was released from jail on Monday, August 9, 2010. Ultimately the county

attorney's office declined to prosecute the charges, and the case was closed. Abeloe alleges that any type of investigation would have led the officers to determine the actual facts, which would have avoided the necessity of arresting him.

## DISCUSSION

Defendants move for judgment on the pleadings in their favor, asserting that Abeloe's claims are barred by the doctrine of qualified immunity. Abeloe's Complaint alleges a single cause of action entitled "Violation of 42 U.S.C. § 1983 and the Fourth Amendment." His single cause of action, however, lists several violations. Specifically, Abeloe alleges that Defendants unlawfully arrested him, subjecting him to physical and mental abuse at the time, and subjected him to unjustifiable detention and restraints. In effectuating Abeloe's arrest and while searching the residence, Abeloe alleges that Defendants' actions were unreasonable, excessive, and unnecessary and violated his right to be free from unreasonable searches. Furthermore, Plaintiff alleges that Defendants, without probable cause, initiated false and malicious criminal charges, and filed false and misleading police reports in an effort to justify their actions.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity balances two important interests –the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.* "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of

fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004).

"Because qualified immunity is 'an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial.'" *Id.* (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has "'repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation.'" *Id.* at 232 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam)).

 "After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff" who must satisfy a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Under the two-part burden, "a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011). Although it may be beneficial in some cases to address the prongs in order, courts have discretion in determining which prong to address first. *Pearson*, 555 U.S. at 236.

Defendants argue that Abeloe has not pleaded facts sufficient to show that his arrest was a violation of his Fourth Amendment rights. Defendants claim that the June 10, 2010 Court Order, on its face, demonstrates that Abeloe was not entitled to unsupervised visitation until he began therapy with Dr. Dodgion and there is no allegation that he had begun therapy. In addition, Defendants argue that the Parent Time Agreement only set a visitation schedule until August 1, 2010, and was expired on August 5, 2010, the date of Abeloe's arrest.

However, Abeloe alleges that he provided the officers with all of the pertinent orders,

agreements, and emails. Although Defendants dispute the fact that they were provided the emails between Abeloe, Mease, and Dr. Dodgion, the court cannot resolve that question of fact at the pleading stage. Defendants appear to rely on the statements in the police reports to support their position. However, the court cannot accept the assertions in the police report as true, especially in a case where the plaintiff alleges that the police reports were falsified to justify the officer's actions. The veracity of the report will need to be established during discovery.

Even if the arrest was a Fourth Amendment violation, Defendants assert that Abeloe cannot demonstrate that his right not to be arrested for custodial interference or child abuse was clearly established on August 5, 2010. "The salient question is whether the state of the law at the time of the incident gave the defendants fair warning that their conduct was unconstitutional." *Gomes v. Wood*, 451 F.3d 1122, 1136 (10th Cir. 2006).

The Tenth Circuit has recognized that when a warrantless arrest is the subject of a §1983 action, the arresting officer is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to make the arrest. *Morris v. Noe*, 672 F.3d 1185 (10th Cir. 2012). Even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present are entitled to immunity. *Id.* Furthermore, "[officers] who are mistaken about the lawfulness of their conduct may still be entitled to qualified immunity if the mistake is reasonable in light of the applicable law and the facts known to them at the time." *Id.* Courts "do not require a case directly on point, but neither may a court deny immunity unless existing precedent has placed the statutory or constitutional question beyond debate." *Hernandez v. Story*, 459 Fed. Appx. 697, 700 (10th Cir. 2012).

In this case, Defendants argue the Abeloe has not alleged that his arrest was objectively

unreasonable because the Defendants assert that they were not provided with the most recent emails between Abeloe, Mease, and Dr. Dodgion. Therefore, based on the information they claim to have been provided, they did not know that the Parent Time Agreement was extended. In addition, the Parent Time Agreement, which Abeloe gave the officers and they agree they had, states that Abeloe had an extended weekend visitation the prior weekend. Therefore, even if the agreement was extended, based on the information on the Agreement, Abeloe would not be entitled to another extended weekend visitation. Furthermore, Mease had contacted the officers and stated that Abeloe was not entitled to an extended weekend visitation.

      The court agrees that much of this evidence supports Defendants' position that there was a mistake of fact in proceeding with the arrest and the officers were justified in their actions based on the information provided to them. However, Abeloe's Complaint alleges that Defendants had all of the relevant information, including the most recent emails. Abeloe also alleges that Defendants inadequately investigated the facts before making the arrest and failed to inquire as to which parent had the children the prior weekend. Abeloe also contends that the information contained in the police reports is false and that the police encouraged Mease not to follow the custodial agreements. While little factual support is given to support these allegations, these disputes prevent the court from determining whether Abeloe's arrest on either of the two charges was reasonable. Construing the facts in Abeloe's favor, the court cannot conclude at this stage of the litigation that Defendants are entitled to qualified immunity.[1] Accordingly, Defendants' motion for judgment on the pleadings is denied.

---

[1] The court notes that Defendants jointly moved for judgment on the pleadings and the parties have not briefed the motion as to the sufficiency of the specific allegations asserted against specific individual officers.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Judgment on the Pleadings is DENIED.

Dated this 5th day of June, 2013.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge