IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| DOUGLAS A. ABELOE,<br><br>      **Plaintiff,**<br><br>vs.<br><br>E. ROBBY RUSSO, MARK ASKERLUND, DAN BARTLETT, and RANDY MAUER,<br><br>      **Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:12CV839DAK<br><br>Judge Dale A. Kimball |

This matter is before the court on Defendants E. Robby Russo, Mark Askerlund, Dan Bartlett, and Randy Mauer's Motion for Summary Judgment based on qualified immunity. On May 13, 2015, the court held a hearing on the motion. At the hearing, Plaintiff was represented by David W. Brown, and Defendants were represented by Michael Hansen. The court took the matter under advisement. The court has considered carefully the memoranda submitted by the parties, as well as the law and facts relating to the motion. Now being fully advised, the court issues the following Memorandum Decision and Order.

## BACKGROUND

Plaintiff Douglas Abeloe seeks relief for alleged violations of 42 U.S.C. § 1983 and the Fourth Amendment against several Cottonwood Heights police officers arising out of Plaintiff's arrest on charges of Felony Child Abuse and Custodial Interference. Abeloe and his ex-wife

Kelli Mease were divorced in June, 2009. In connection with their divorce, they had a prolonged custody dispute regarding their two minor children. Defendants are current or former officers of the Cottonwood Heights Police Department. The officers were aware of Abeloe and Mease because of their numerous contacts with the police department.

On January 28, 2010, Abeloe and Mease met with Dr. David Dodgion, Ph.D, a licensed psychologist, and agreed to a visitation schedule. After subsequent communications with the parties to clarify certain issues, sometime in February 2010, Dr. Dodgion memorialized the agreement in a document entitled "Parent Time Agreement."

The Parent Time Agreement states that "every other week Mr. Abeloe will have Sydney and Erik for an extended weekend with Thursday overnights on alternate weeks." The agreement then has sections explaining the schedules for "Extended weekend visitation," "Standard weekend visitation," and "Thursday midweek overnight." The agreement then lists specific dates for extended weekend and standard weekend visitations for the ensuing six months. The last visitation provided for in the agreement was an extended weekend visit for July 28 to August 1, 2010.

A few months later, on June 14, 2010, the divorce court issued an Order Modifying Decree of Divorce and Enforcing Settlement Agreement. The June 2010 court order states that the custody provisions of the original degree remained in effect, with specified exceptions for Abeloe's parent time. The order provides for parent time after Abeloe's start of therapy with Dr. Dodgion as follows: "The parties agree that they shall each follow the recommendation of Dr. Dodgion as to: (a) the need for therapy by each of the parties to this Settlement Agreement . . . (b) on-going parent-time by Doug Abeloe and whether that parent-time should continue to be

supervised by his parents; (c) make-up parent-time to be exercised by Doug Abeloe; and (d) when Doug Abeloe should be permitted to exercise his first right of refusal to provide child care for the two above-named minor children."

The specified six-month visitations in the Parent Time Agreement with Dr. Dodgion ended on August 1, 2010. There was some question as to whether the Parent Time Agreement remained in effect after that date. On August 3, 2010, Mease emailed Dr. Dodgion stating, "I realize that we are not under contract with you, but I would appreciate your help in clarifying where we stand regarding our arrangement." She then provided Dr. Dodgion with the language from the June 14, 2010 Court Order regarding parent-time after the start of therapy with Dr. Dodgion. She then stated, "It is my understanding that you are <u>not</u> responsible for determining our custody agreement. You did coordinate the makeup parent time and schedule for the first 6 months (thank you for doing that with us) but that agreement ended the end of July. I believe, at this point, we are to go back to our original custody agreement in the divorce. Am I correct in believing that? Please let me know!"

On August 4, 2010, Dr. Dodgion responded by sending an email to both Abeloe and Mease. The email states: "Although it is not my role to determine custody, the settlement agreement specified that I am to determine on-going parent time by Doug. When we worked out the parent time agreement, I intended that the standard visitation schedule established in that agreement was to be ongoing. The reason that the agreement only covered a 6 month period was because Doug had additional make-up time that was to be completed during that period. This changed the standard schedule and was complicated, hence the need for the specificity of the agreement. After that 6 months parent time was to return to the standard schedule as identified in

the parent time agreement, not minimum standard."

On August 5, 2010, Abeloe responded to Dr. Dodgion's email by stating that after the six-month period of visitation, the Parent Time Agreement would revert to extended visitation schedule instead of the standard visitation based on the first sentence of the agreement, which stated: "Every other week Mr. Abeloe will have Sydney and Erik for an extended weekend with Thursday overnights on alternate weeks." He provided further explanation for what he believed to be the on-going Parent Time Agreement and asked Dr. Dodgion if that was a correct interpretation.

On August 5, 2010, at 10:26 a.m., Dr. Dodgion responded that his use of the phrase "standard visitation schedule" referred to the "extended weekend visitation schedule which is Doug's standard visitation." In essence, Dr. Dodgion's response agreed with Abeloe.

Approximately an hour and a half later, at 11:54 a.m., Abeloe emailed Chief Russo of the Cottonwood Heights Police. Abeloe asked Chief Russo to read, and have his other officers read, the June 14, 2010 Court Order. He stated that the order "makes clear what the terms of the custody agreement is. The document supercedes the original divorce decree as it is the most recent order. Regardless of any perceived disagreements from Kelli Mease, the language of the modified court order is clear and binding. There are no provisions or language in the current agreement for Kelli to change the parent time schedule set forth by Dr. Dodgion, PHD." After stating that he would request a case number for each violation of the Parent Time Agreement by Mease, he states: "What I am asking for is this......1. Please review the most recent court order dated 06-14-2010. See attached. 2. Please review the Parent Time agreement set forth by Dr. Dodgion dated 02-10-10. See attached. 3. Briefly discuss this with the officers and Sargent's so

that we all have the same understanding of the provisions regarding visitation in the most recent court order and parent time agreement." Finally, he stated that he would be happy to meet with Chief Russo or anyone he chose or have his attorney contact him. Despite the emails that had been going back and forth between Abeloe, Mease, and Dodgion regarding the ongoing effect of the Parent Time Agreement, Abeloe did not attach any of the emails.

 During the first week of August, 2010, Abeloe went to the police department several times to speak with the officers about the custody situation. On August 3, 2010, Abeloe met with Sergeant Askerlund regarding the custody dispute. Abeloe asked Askerlund several "what if" questions relating to what the officers would do if he kept his children past the time allowed in the custody orders. On August 4, 2010, Officer Mauer met separately with both Mease and Abeloe about the custody dispute. He does not recall reviewing any court orders. After meeting with Mauer, Abeloe went to the courthouse to obtain a certified copy of the modified divorce decree. When he returned to the police department, Officer Mauer was unavailable and he left the order with the receptionist. Officer Mauer informed Sergeant Askerlund of his contact with Abeloe and Mease.

 Abeloe's visitation rights were further complicated by vacation time disputes. Mease took the children on vacation at the end of July, returning home on the night of Saturday, July 31, 2010. Prior to the vacation, Mease had emailed Abeloe, stating: "As this would cut into your weekend–I would like to propose that you take the kids from Saturday morning until Wednesday morning [August 1-4, 2010]. That way you still have the same number of dates. Will that work for you? We are flexible on this–let us know what works best for you." Abeloe responded: "let's exchange this weekend for the weekend of August 5th thru the 9th. The regular schedule

then continues August 12 thru the 16th." Mease never responded to Abeloe's counteroffer.

On August 2, 2010, Abeloe emailed Mease: "I was scheduled to exercise my parent time on Thursday July 22nd however you took the children to Ca. Your email clearly states that you would be taking them the last week of July and I agreed to exchange my scheduled weekend July 29th thru 8-2 with your weekend." Mease responded by apologizing that she had not been clear on when they were leaving on vacation but explaining that she believed it was only because she was primarily concerned with taking Abeloe's weekend. She then stated: "I will agree to let you have the kids on Wednesday August 4th to make up for the Thursday that we left town. However, I do propose that it be from 10 am until 7 pm." She also agreed that Abeloe should have the children for a vacation as well. She stated: "So yes, I do agree that you may have the kids Monday August 16th until Saturday August 21st." Mease claims that Abeloe replied and accepted Mease's proposal that the parties exchange Abeloe's parent time over the last weekend in July for Mease's parent time from August 16-21, 2010. However, in his deposition, Abeloe denied that he accepted Mease's vacation proposal.

On August 3, 2010, the parties exchanged emails disputing the makeup parent time. Mease wrote: "We agreed to ONE make up day. Your request for the extended weekend is not acceptable to me. I do not agree with your proposed make up time, therefore, we will go with the standard state mandated visitation weekend time: Friday August 6 @ 9:00 am until Sunday August 8th, 7:00 pm. It is apparent that we are not in agreement and need to go back to mediation to resolve this as well as other issues."

On the evening of August 5, 2010, Mease called the Cottonwood Heights to report that Abeloe was in violation of their custody orders. Sergeant Askerlund spoke with Mease regarding

her complaint and then went to her home.  Mease provided Sergeant Askerlund with the parties' original Divorce Decree, the Modified Divorce Decree, and the Parent Time Agreement.  Mease also informed Askerlund that Abeloe was to return the children, that Abeloe had a shotgun in his house, and that Abeloe had been acting very strange recently.  Mease did not provide Askerlund with the emails between herself and Abeloe and Dr. Dodgion.

Sergeant Askerlund and Officer Bartlett called Michaela Andruzzi, an Assistant Salt Lake County District Attorney, regarding the case.  The officers spoke to her about custodial interference and child abuse charges.  At the conclusion of the call, Ms. Andruzzi said that she thought they had enough to make an arrest.

Sergeant Askerlund and Officer Bartlett then drove to Abeloe's residence.  The children were at Abeloe's home when the officers arrived.  There is a dispute as to what was said between the officers and Abeloe.  However, it is undisputed that Abeloe stated that he was entitled to parent time from August 5 to 9, 2010.  When Abeloe refused to turn over his children, Sergeant Askerlund placed Abeloe under arrest for custodial interference and child abuse.  Abeloe was released from jail on August 10, 2010, and no criminal charges were subsequently filed.

## DISCUSSION

Defendants move for summary judgment, asserting that Abeloe's claims are barred by the doctrine of qualified immunity.  Abeloe's Complaint alleges a single cause of action entitled "Violation of 42 U.S.C. § 1983 and the Fourth Amendment."  Specifically, Abeloe alleges that Defendants unlawfully arrested him.  Abeloe also alleges that Defendants violated his right to be free from unreasonable searches and seizures when they removed his children.  However, during the briefing of the motion for summary judgment, Abeloe agreed to withdraw the search and

seizure claim. Therefore, the only claim is one for unlawful arrest.

First, as an initial matter, Abeloe asks the court to exclude the police report, which is attached to Defendants' Motion for Summary Judgment as "Exhibit P," because the report is hearsay. However, the court can consider the police report in determining whether Askerlund had probable cause to arrest Abeloe because the report is not being submitted to demonstrate the truth of the matters asserted in the report. Rather, Defendants assert that the report is being submitted to demonstrate the effect that the information set forth in the report had on Sergeant Askerlund. The police report is admissible to show the facts and circumstances communicated to the arresting officer and whether those facts and circumstances would lead a reasonable officer to believe that there was probable cause that a crime had been committed. Accordingly, the hearsay rule does not bar the court's consideration of the police report.

"After a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff" who must satisfy a "heavy two-part burden." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001). Under the two-part burden, "a court must consider whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011).

Abeloe alleges that Defendants violated his constitutional rights when they arrested him without probable cause. "A police officer violates an arrestee's clearly established Fourth Amendment right to be free of unreasonable seizure if the officer makes a warrantless arrest without probable cause." *Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002). However, qualified immunity shields defendants from suit if "a reasonable officer could have

believed the [plaintiff's arrest] to be lawful, in light of clearly established law and the information the arresting officers possessed." *Hunter v. Bryant*, 112 S. Ct. 534, 536 (1991). "Under settled law, [officers] are entitled to immunity if a reasonable officer could have believed that probable cause existed." *Id.* "Probable cause existed if 'at the moment the arrest was made . . . the facts and circumstances within their knowledge and of which they had reasonable trustworthy information were sufficient to warrant a prudent man in believing that [the plaintiff] had violated the law." *Id*.

Based on Utah's custodial interference statute, visitation is "court-ordered parent-time or visitation entered by a court of competent jurisdiction." Utah Code Ann. 76-5-303(1). Abeloe asserts that the question before the court, therefore, becomes: at the time of Abeloe's arrest, would a prudent officer believe (1) that Abeloe was not entitled to parent time under the parties' court order; (2) that he took, enticed, concealed, detained, or withheld the children from Mease; (3) that he had the intent to interfere with the custody of the children; and (4) that Mease had not consented to Abeloe's conduct? Abeloe contends that all of these factors must be present for Defendants to have probable cause to arrest him for custodial interference under Utah Code Ann. § 76-5-303(2)(b).

However, "[e]ven law enforcement officials who 'reasonably but mistakenly conclude that probable cause is present' are entitled to immunity." *Id.* "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Brosseau v. Haugen*, 543 U.S. 194, 125 S. Ct. 596, 599 (2004).

Defendants contend that Askerlund had far more than is legally necessary to establish

probable cause to arrest Abeloe. Standing alone, Mease's report of custodial interference was sufficient to establish probable cause. *Untied States v. Flowers*, 203 Fed. Appx. 221, 224 (10th Cir. 2006) ("[O]nce the officers received further information from Ms. Harring as to Mr. Flowers's threatening conduct, they had probable cause to arrest him."); *Untied States v. Patane*, 304 F.3d 1013, 1017 (10th Cir. 2002) ("Police are entitled to base an arrest on a citizen complaint . . . of a victim . . . without investigating the truthfulness of the complaint, unless . . . they have reason to believe it's fishy.").

Moreover, once a reasonably credible complaint has been made, the existence of probable cause to arrest does not depend on whether the complainant was right. "Probable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth of the matters." *Kelley v. Myler*, 149 F.3d 641, 647 (7th Cir. 1998).

Abeloe argues that it cannot be established that probable cause existed because it is disputed whether the officers reviewed the court order prior to making the arrest. In *Kyllingstad v. Town of Camp Verde*, 243 Fed. Appx. 226 (9th Cir. 2007), the arresting officer failed to read the relevant provisions of the temporary custody order before arresting Kyllingstad for custodial interference. *Id.* at 228. A jury and the Ninth Circuit both agreed that such conduct was objectively unreasonable. *Id.*

In this case, Abeloe testified that he attempted to give Askerlund the Parent Time Agreement at the police station on August 3, 2010, and at his home on August 5, 2010, prior to the arrest. Both times Askerlund refused to take the agreement and read it. Abeloe also claims that when Askerlund was arresting him, Askerlund stated, "We don't give a damn about your court orders." However, Askerlund testified that he reviewed the divorce decree, the modified

divorce decree, and the Parent Time Agreement before arresting Abeloe. This evidence remains undisputed. Although Abeloe questions whether Askerlund read the materials or cared about the materials, Abeloe could only testify that he did not know if Askerlund had read the documents. Therefore, this case is in stark contrast with *Kyllingstad*.

Defendants contend that Sergeant Askerlund's decision to arrest Abeloe was objectively legally reasonable because the court order and Parent Time Agreement do not demonstrate that Abeloe was entitled to parent time as he alleges. The court recognizes that Abeloe and Mease had made the issue a convoluted mess for the police officers to try to sort out. Without the emails between Abeloe, Mease, and Dr. Dodgion, it was unclear whether the Parent Time Agreement was in effect after the specified dates on the agreement. It was also reasonable for Askerlund to believe that the extended weekend schedule that was specifically dated on the Parent Time Agreement ended on August 1. The Parent Time Agreement shows the standard weekend schedule ending June 20, the Thursday midweek schedule ending July 29, and the extended weekend schedule ending August 1.

Even if the Parent Time Agreement had not expired, extrapolating from its terms, Askerlund would not have thought that Abeloe was entitled to parent time on the weekend of the arrest. Even if the Parent Time Agreement continued in effect after August 1, 2010, extrapolating from the specific dates listing in the agreement would not give Abeloe parent time of the children from August 5-9, 2010. And, contrary to Abeloe's assertions, the emails back and forth do not clarify that Abeloe was entitled to parent time from August 5-9, 2010. There is no clear agreement regarding August 5-9, 2010, between the parties. The emails discuss August 5-9, 2010, and August 16-21, 2010, as potential parent time for Abeloe without identifying which was

ultimately agreed upon.

Even if Askerlund was mistaken regarding the application of the Parent Time Agreement, the mistake was reasonable in light of the fact that Mease reported custodial interference. Therefore, Askerlund had a report of custodial interference from Mease and a Parent Time Agreement that did not give Abeloe parent time on August 5-9, 2010. Furthermore, even the emails between the parties were unclear as to whether Abeloe was to receive parent time from August 5-9, 2010, or August 16-21, 2010.

The basis of Abeloe's complaint appears to be that Askerlund did not take the time on August 5, 2010, to review the various emails between Abeloe and Mease, the two emails from Dr. Dodgion, and telephone Abeloe's attorney prior to arresting him. The Constitution, however, does not require Askerlund to take such steps. Police "have no constitutional duty to keep investigating a crime once probable cause has been established." *Kompare v. Stein*, 801 F.2d 883, 890 (7th Cir. 1986). "The question is whether [the police] have reasonable grounds on which to act, not whether it was reasonable to conduct a further investigation." *Gramenos v. Jewel Companies, Inc.*, 797 F.2d 432, 439 (7th Cir. 1986); *see also Romero v. Fay*, 45 F.3d 1472, 1478 (10th Cir. 1995) (once probable cause determined to exist, officer's failure to question alibi witnesses prior to arrest did not negate probable cause).

It was not up to Defendants to determine whether Abeloe was guilty of custodial interference. Askerlund's only duty was to determine whether there was probable cause to arrest Abeloe. Abeloe conflates the type of evidence necessary to show probable cause with the evidence necessary to prove guilt. Probable cause is a practical compromise. "Probable cause is only a probability or substantial chance of criminal activity, not a certainty that a crime was

committed." *Beauchamp v. City of Noblesville*, 320 F.3d 733, 743 (7th Cir. 2003). Based upon his interactions with Abeloe in the days prior to August 5, Officer Mauer's report to him, Mease's complaint of custodial interference, his review of the court orders and Parent Time Agreement, his telephone conference with the District Attorney's office, and Abeloe's refusal to give up his children, Askerlund reasonably believed that he had probable cause to arrest Abeloe. Even if Askerlund was mistaken, the court concludes that Askerlund acted reasonably. Therefore, the court concludes that Askerlund is entitled to qualified immunity.

In addition, Defendants argue that none of the other Defendants can be liable for unlawful arrest because none of those officers arrested Abeloe. Abeloe argues that each of the Defendants are liable for Abeloe's constitutional deprivations because each Defendant either participated directly in the arrest or were involved in a supervisory role. "A supervisor is not liable under 1983 unless an 'affirmative link' exists between the constitutional deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." *Butler v. City of Norman*, 992 F.2d 1053, 1055 (10th Cir. 1993). Abeloe has not established an affirmative link between the other officers' actions and Abeloe's arrest. None of the other officers were assigned to the matter or investigated whether a crime had been committed. Consequently, none of the other Defendants can be said to have wrongfully arrested Abeloe. However, even if there was an affirmative link, the other officers would be entitled to qualified immunity for the same reasons as Askerlund.

Finally, Abeloe argues that Defendants are liable for other violations of his Fourth Amendment rights. However, Abeloe has not demonstrated that any of his remaining claimed injuries are cognizable under the Fourth Amendment. The failure to perform a reasonable

investigation would be part of a wrongful arrest claim. The alleged filing of a false and misleading police report did not result in any harm to Abeloe as he was not criminally charged based on the police report. In addition, providing erroneous, false, illegal, and misleading advice to an independent third party does not clearly implicate constitutional interests. Accordingly, Defendants are entitled to qualified immunity on these claims.

## CONCLUSION

Based on the above reasoning, Defendants' Motion for Summary Judgment is GRANTED. The Clerk of Court is directed to enter judgment in favor of Defendants and close the case.

Dated this 18th day of June, 2015.

BY THE COURT:

_____
Dale A. Kimball,
United States District Judge